UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

**FRIDA KAHLO CORPORATION,** a Panamanian corporation, and **FRIDA KAHLO INVESTMENTS, S.A.,** a Panamanian corporation,

        Plaintiff,

vs.

**MARA CRISTINA ROMEO PINEDO,** an individual,

        Defendant.

_____/

## COMPLAINT

### JURY TRIAL DEMANDED

The Plaintiffs, Frida Kahlo Corporation, a Panamanian corporation, and Frida Kahlo Investments, S.A., a Panamanian corporation, by and through its undersigned counsel, pursuant to the Fed. R. Civ. P., hereby sue Defendant, Mara Cristina Romeo Pinedo, an individual, and allege for their Complaint, as follows:

### Nature of the Action

1. The Plaintiffs brings this lawsuit against the Defendant for trademark infringement under the Lanham Act, false designation of origin under the Lanham Act, unfair competition under the Lanham Act, commercial defamation, violation of the Anticybersquatting Consumer Protection Act, tortious interference with a business relationship and for Declaratory Judgment.

1

**Jurisdiction and Venue**

2. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §1331, §1332 and §1367.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this action occurred in this district.

4. The Court has personal jurisdiction over the Defendant, because she has personally, or through an agent or personal representative: operated, engaged in, or carried on a business in this state by directing offers for the sale of goods bearing the FRIDA KAHLO trademark, and offers to license the use of the FRIDA KAHLO trademark into this state; committed tortious acts within this state by publishing commercially defamatory statements intended to cause harm in the United States, including in the state of Florida; causing injury to persons or property within this state arising out of an act or omission by the Defendant outside this state, because, at or about the time of the injury, she was engaged in solicitation of the sale of goods directed to this state; or, in the alternative, Defendant has been engaged in substantial and not isolated activity within this state, such as, by way of example, attending either directly, or through an agent or representative, shareholders meeting(s) of the Plaintiff corporation, Frida Kahlo Corporation, in this judicial district.

**The Parties**

5. Plaintiff, Frida Kahlo Corporation (hereinafter, "FKC"), is a Panamanian corporation, with its principal place of business in Panama City, Panama, and an office located in Panama.

6. FKC is the owner by absolute assignment of all of the rights, title, and interest to and derived from the "FRIDA KAHLO" trademarks, as more fully detailed below (hereinafter, "the FKC Trademarks").

7. Plaintiff, Frida Kahlo Investments, S.A. (hereinafter, "FKI"), is a Panamanian corporation formed in 2008, with an office in Panama City, Panama and an office in Bal Harbor, Florida.

8. FKC, through its wholly owned subsidiary, FKI, manages the FKC Trademarks, including the management of its trademark licenses.

9. FKC has licensed the FKC Trademarks to licensees located in the United States, including at least one licensee located in this judicial district.

10. Upon information and belief, Defendant, Mara Cristina Romeo Pinedo (hereinafter, "Pinedo" or "Defendant"), is an individual residing in Mexico. Pinedo is a shareholder and director of FKC.

**Facts**

11. The world-famous Mexican artist, Magdalena Carmen Frida Kahlo y Calderon (aka "Frida Kahlo"), died intestate on July 13, 1954 in Mexico.

12. As per Mexico's Industrial Property Law, section XII or Article 90, Industrial Property rights are passed down from generation to generation up to the fourth degree in the collateral line.

13. In accordance with Mexico's Industrial Property Law, Frida Kahlo's industrial property rights passed to Isolda Pinedo Kahlo, in her capacity of the third degree in the collateral line of succession.

14. Upon information and belief, Defendant is the daughter of Isolda Pinedo Kahlo and on or about May 28, 2003 was given a general power of attorney over all of Isolda Pinedo Kahlo's legal matters, including the right to transfer the Frida Kahlo industrial property rights Isolda Pinedo Kahlo inherited as per Mexican law.

15. In or around 2004, Defendant joined with other shareholders to form the Plaintiff, Frida Kahlo Corporation, with the goal of commercializing the "Frida Kahlo" brand.

16. FKC was formed in 2004, with the mission to educate, share and preserve Frida Kahlo's art, image, and legacy through the worldwide commercialization and licensing of the Frida Kahlo brand.

17. From the inception of the company, through to this day, Defendant is a shareholder and director of FKC.

18. Defendant has actively participated in the company, including attending annual shareholder meetings, either in person or through a proxy.

19. FKC is the owner of all right, title and interest to the "Frida Kahlo" brand, worldwide, by complete assignment from both Isolda Pinedo Kahlo herself, and by assignment from Defendant under her Power of Attorney.

20. Since its inception, FKC has invested substantial time and money, and has worked diligently to commercialize the "Frida Kahlo" brand, worldwide.

21. FKC is the owner of all right, title and interest in and to dozens of trademarks, registered in multiple countries, including in the United States.

22. FKC is the owner of at least U.S. trademark registration nos: 3318902, 3318903, 3559846, 3799598, 3787499, 3326313, 3326313, 3326314, 3437962, 3439763, 3439764,

4578719, 4739999, 5341582, 5351310, and 5186539 (collectively, the "FKC U.S. Trademark Registrations".)

23. FKC is also the owner of multiple pending US trademark applications.

24. FKC has established common law rights in various marks through substantial and continuous use in commerce in the United States (hereinafter, the U.S. common law rights and the FKC U.S. Trademark Registrations, referred to as the "FKC Trademarks").

25. FKC owns trademark registrations for the mark FRIDA KAHLO in Mexico, the European Union, and other countries around the world.

26. The "Frida Kahlo" brand has been regarded as a "notorious trademark" in at least Mexico and Europe.

27. FKC has successfully licensed the "Frida Kahlo" brand gaining worldwide exposure through collaborations with companies and manufacturers such as Converse, Aeromexico, and Mattel.

28. Through its commercialization and licensing efforts on multiple goods and services marketed to consumers in the United States, the "Frida Kahlo" brand represents a famous trademark in the United States.

29. In or around 2011, Defendant became disaffected with FKC and, instead of addressing her concerns – as a shareholder and director - within the corporate structure, proceeded to undermine the validity of the FKC marks by attacking the legitimacy of FKC's rights to the "Frida Kahlo" brand online and through social media.

30. Upon information and belief, Defendant has embarked on a campaign to misappropriate the rights that she, and her mother, rightfully and legally ceded to FKC, in order to profit at FKC's expense and detriment.

31. Upon information and belief, Defendant, along with her daughter Mara de Anda Romeo, have published through the internet, social media, and US based news outlets, false and slanderous press releases claiming that FKC does not own the rights that it licenses.

32. Upon information and belief, Defendant, along with her daughter Mara de Anda, have falsely appropriated the domain www.FKAHLO.com and use it to fraudulently offer licenses, products and services under the "Frida Kahlo" brand. The domain hosts content that is in English, and is targeted and available to consumers in the United States, including in this judicial district.

33. Upon information and belief, Defendant, along with her daughter Mara de Anda, has falsely created a brand page on the Facebook social media platform named "Frida Kahlo," at https://www.facebook.com/fridakahlo/, and has used that platform to target consumers in the United States, as well as to discredit and disparage FKC.

34. Upon information and belief, Defendant, along with her daughter Mara de Anda, has falsely created a brand page on the Twitter social media platform named "Frida Kahlo," at https://twitter.com/fridakahlo/, and has used that platform to target consumers in the United States, as well as to discredit and disparage FKC.

35. Upon information and belief, Defendant, along with her daughter Mara de Anda, on or about March 9, 2018, on Mexican television, and re-broadcast through their US social media platforms, confirms that the rights to the "Frida Kahlo" mark were assigned to FKC.

36. In the news broadcast, Defendant falsely characterized the assignment of rights to FKC as being *only* the literal element "Frida Kahlo," when, in fact, various "design marks" were also assigned, as well as the mark PASION POR LA VIDA.

37. Notwithstanding this public admission, Defendant, in her public campaign to discredit and disparage the rights owned by FKC, and against her fiduciary duties as shareholder

and director of FKC, has time and again neglected to inform the public of her ownership and participation in FKC.

38. On or about April 18, 2018, Defendant published on her "Frida Kahlo" Facebook page, an open letter to "the public" claiming, *inter alia*, that a court in Mexico has, purportedly, issued a decree that FKC cannot use the brand, image and work of Frida Kahlo without consent of "the owners." The letter also goes on to state that FKC is to refrain from, "any act tending to commercialize products that have the brand and image of Frida Kahlo." This "open letter" to the public only identifies the social media account @Frida Kahlo and the website www.fkahlo.com. The "open letter" does not name who they claim the "owners" are, but clearly present the false impression to the consuming public that FKC does not have the rights, when FKC is indeed the rightful owner.

39. In reality, the actor behind the "open letter" is the Defendant herself in her fraudulent campaign against FKC.

40. All conditions precedent have been met and the claims being asserted by Plaintiffs are ripe for consideration by the Court.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT
## UNDER THE LANHAM ACT 15 U.S.C. §1125(a)

41. Plaintiff repeats and realleges the allegations of paragraphs 1 through 40 as if set forth herein in full.

42. The FKC Trademarks include several validly issued United States trademark registrations as well as common law rights in the United States, covering several classes of goods.

43. The FKC Trademarks are distinctive.

44. The FKC Trademarks are famous.

45. The consuming public of the United States recognizes the FKC trademarks as designating FKC as the source of goods and/or services.

46. Defendant has registered, or caused another, to register the domain www.fkahlo.com, a domain that is identical or confusingly similar to Plaintiff's FKC Trademarks.

47. The Defendant registered, updated or has been using the domain name www.fkahlo.com with a bad faith intent to profit from Plaintiffs' FKC Trademarks.

48. The webpages found at www.fkahlo.com expressly offer goods and services, using the trademark FRIDA KAHLO, a trademark that is identical to Plaintiff's FKC Trademarks.

49. Defendant's website is a counterfeit website in that it is made to appear as if it is the legitimate trademark owner of the FKC Trademarks by referencing the FKC Trademark, FRIDA KAHLO, with the ® symbol next to the trademark, and also makes reference to the Plaintiff, Frida Kahlo Corporation. *See* **Exhibit "A."**

50. Additionally, because Defendant is a minority interest owner in the Plaintiff corporation, her actions to compete against Plaintiff by using the domain www.fkahlo.com, show her bad faith intent to profit from Plaintiff's FKC Trademarks.

51. Defendant's Facebook page also displays the FKC trademarks.

52. Defendants's Twitter account also displays the FKC Trademarks.

53. Defendant's disparaging remarks about Plaintiff's rights in the FKC Trademarks, and Defendant's failure to acknowledge Plaintiff's rights in the FKC Trademarks on the website found at www.fkahlo.com further evidence Defendant's bad faith intent to profit from Plaintiff's FKC Trademarks.

54. Defendant's unauthorized use of the FKC Trademarks in interstate commerce on her website found at www.fkahlo.com, Facebook page, and Twitter account, including by

offering to consumers, the ability to purchase books, dolls, and other goods, as well as Defendant's offering to license the FRIDA KAHLO trademark, is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendant with FKC or as to the origin, sponsorship, or approval of her goods, services or commercial activities.

55. Defendant's activities violates federal law, impairs the distinctiveness of the FKC Trademarks and damages the goodwill of FKC's rights in its FKC Trademarks.

56. As a direct and proximate result of Defendant's misconduct, FKC has been and will continue to be irreparably harmed, injured and damaged and such harm will continue until and unless enjoined by this Court.

57. As a direct and proximate result of Defendant's misconduct, Defendant has been harmed through the loss of at least one licensing opportunity in the United States.

58. As a direct and proximate result of Defendant's misconduct, Defendant is causing injury to FKC's reputation which cannot be remedied solely through an award of damages.

59. Defendant's misconduct has been and is knowing, deliberate and willful, and Defendant's willful use of the FKC mark as aforesaid is without excuse or justification, rendering this an exceptional case and entitling FKC to its counsel fees and costs.

## COUNT II – FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT 15 U.S.C. § 1125(a)

60. Plaintiff repeat and reallege the allegations of paragraphs 1 through 40 as if set forth herein in full.

61. FKC owns several validly issued United States trademark registration for the FKC trademarks, covering several classes of goods.

62. The consuming public of the United Sates recognizes the FKC marks as

designating FKC as the source of goods and/or services.

63. Defendant operates the website located at www.fkahlo.com, and through the website displays the FKC Trademarks without authorization, offering to sell goods and to license the FKC Trademarks.

64. Defendant's Facebook page displays the FKC Trademarks without authorization.

65. Defendant's Twitter account displays the FKC Trademarks without authorization.

66. Defendant has, in commerce, made a false or misleading representation of fact in connection with goods or services which is likely to cause consumer confusion as to the approval of the goods and services by FKC.

67. Defendant's statements on the website located at www.fkahlo.com, Facebook and Twitter, are aimed at consumers, commercial entities and others, located in the U.S., including Florida, because, inter alia, the website offers content in English and Spanish.

68. FKC has not authorized Defendant to use the FKC Trademarks to promote the sale of goods or to offer licenses for the use of the FKC Trademarks.

69. Defendant's use of the FKC Trademarks implies that Defendant has been authorized to transact business as the Frida Kahlo Corporation and to sell goods and offer licenses to use the FKC Trademarks, and is therefore, likely to cause consumer confusion.

70. Defendant's unauthorized use of the FKC Trademarks in interstate commerce on her website found at www.fkahlo.com, Facebook page, and Twitter account, including by offering to consumers, the ability to purchase books, dolls, and other goods, as well as Defendant's offering to license the FRIDA KAHLO trademark, is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendant with FKC or as to the origin, sponsorship, or approval of her goods, services or commercial activities.

71. Defendant's acts have been willful, knowing, deliberate and intended to benefit Defendant at Plaintiffs' expense.

72. As a direct and proximate result of Defendant's unlawful acts, Plaintiffs have been and continue to be damaged, have suffered reputational injury flowing directly from said unlawful acts.

73. Upon information and belief, Defendant's harmful and unlawful acts have already directly caused Plaintiffs to lose at least one opportunity to license the FKC Trademarks within the United States.

74. Plaintiffs are entitled to injunctive relief, recover compensatory damages, treble damages and reasonable attorneys fees and costs.

75. Plaintiffs have no adequate remedy at law.

76. As a direct and proximate result of Defendant's misconduct, Plaintiffs have been and will continue to be irreparably harmed, injured and damaged and such harm will continue until and unless enjoined by this Court, and will cause injury to FKC's reputation which cannot be remedied solely through an award of damages.

77. Defendant's misconduct has been and is knowing, deliberate and willful, and Defendant's willful use of the FKC Trademark as aforesaid is without excuse or justification, rendering this an exceptional case and entitling FKC to its counsel fees and costs.

## COUNT III – VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT 15 U.S.C. §1125(d)

78. Plaintiff repeats and realleges the allegations of paragraphs 1 through 40 as if set forth herein in full.

79. The FKC Trademarks include several validly issued United States trademark

registrations as well as common law rights in the United States, covering several classes of goods.

80. The FKC Trademarks are distinctive.

81. The FKC Trademarks are famous.

82. The consuming public of the United Sates recognizes the FKC trademarks as designating FKC as the source of goods and/or services.

83. Defendant has registered, or caused another, to register the domain www.fkahlo.com, a domain that is identical or confusingly similar to Plaintiff's FKC Trademarks.

84. The Defendant registered, updated or has been using the domain name www.fkahlo.com with a bad faith intent to profit from Plaintiffs' FKC Trademarks.

85. The webpages found at www.fkahlo.com expressly offer goods and services, using the trademark FRIDA KAHLO, a trademark that is identical to Plaintiff's FKC Trademarks.

86. Defendant's website is a counterfeit website in that it is made to appear as if it is the legitimate trademark owner of the FKC Trademarks by referencing the FKC Trademark, FRIDA KAHLO, with the ® symbol next to the trademark, and also makes reference to the Plaintiff, Frida Kahlo Corporation. *See* **Exhibit "A."**

87. Additionally, because Defendant is a minority interest owner in the Plaintiff corporation, her actions to compete against Plaintiff by using the domain www.fkahlo.com, show her bad faith intent to profit from Plaintiff's FKC Trademarks.

88. Defendant's Facebook page also displays the FKC trademarks.

89. Defendants's Twitter account also displays the FKC Trademarks.

90. Defendant's disparaging remarks about Plaintiff's rights in the FKC Trademarks, and Defendant's failure to acknowledge Plaintiff's rights in the FKC Trademarks on the website found at www.fkahlo.com further evidence Defendant's bad faith intent to profit from Plaintiff's

FKC Traemarks.

91. Defendant's unauthorized use of the FKC Trademarks in interstate commerce on her website found at www.fkahlo.com, Facebook page, and Twitter account, including by claiming that consumers and purchase books, dolls, , violates federal law, and is in violation of OSHA requirements, impairs the distinctiveness of the FKC mark and damages the goodwill of FKC's rights in the said mark.

92. As a direct and proximate result of Defendant's misconduct, FKC has been and will continue to be irreparably harmed, injured and damaged and such harm will continue until and unless enjoined by this Court, and will cause injury to FKC's reputation which cannot be remedied through an award of damages.

93. Plaintiffs are entitled to a preliminary and permanent injunction against Defendant from further use of the domain to infringe FKC's trademark rights and for an order transferring the domain from Defendant or its proxy to the Plaintiffs.

94. Defendant's misconduct has been and is knowing, deliberate and willful, and Defendant's willful use of the FKC mark as aforesaid is without excuse or justification, rendering this an exceptional case and entitling FKC to its counsel fees and costs.

## COUNT IV – FALSE ADVERTISING AND COMMERCIAL DEFAMATION UNDER THE LANHAM ACT

95. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 40 hereof as if set forth herein in full.

96. FKC owns several validly issued United States trademark registration for the FKC trademarks, covering several classes of goods.

97. The consuming public of the United Sates recognizes the FKC marks as

designating FKC as the source of goods and/or services.

98. Defendant operates the website located at www.fkahlo.com, and through the website displays the FKC Trademarks without authorization, offering to sell goods and to license the FKC Trademarks.

99. Defendant's Facebook page displays the FKC Trademarks without authorization.

100. Defendant's Twitter account displays the FKC Trademarks without authorization.

101. Defendant has, in commerce, made a false or misleading representation of fact in connection with goods or services which is likely to cause consumer confusion as to the approval of the goods and services by FKC.

102. Defendant's statements on the website located at www.fkahlo.com, Facebook and Twitter, are aimed at consumers, commercial entities and others, located in the U.S., including Florida, because, inter alia, the website offers content in English and Spanish.

103. FKC has not authorized Defendant to use the FKC Trademarks to promote the sale of goods or to offer licenses for the use of the FKC Trademarks.

104. Defendant's use of the FKC Trademarks implies that Defendant has been authorized to transact business as the Frida Kahlo Corporation and to sell goods and offer licenses to use the FKC Trademarks, and is therefore, likely to cause consumer confusion.

105. Defendant's unauthorized use of the FKC Trademarks in interstate commerce on her website found at www.fkahlo.com, Facebook page, and Twitter account, including by offering to consumers, the ability to purchase books, dolls, and other goods, as well as Defendant's offering to license the FRIDA KAHLO trademark, is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendant with FKC or as to the origin, sponsorship, or approval of her goods, services or commercial activities.

106. Defendant has publicly stated, in oral pronouncements, as well as in writings, that FKC does not have the proper authority to sell and/or license goods using the FKC Trademarks, statements that are false, slanderous and libelous, and that are causing commerical harm and damage to FKC and FKI.

107. Upon information and belief, Defendant's harmful and unlawful acts have already directly caused Plaintiffs to lose at least one opportunity to license the FKC Trademarks within the United States.

108. Defendant's acts have been willful, knowing, deliberate and intended to benefit Defendant at Plaintiffs' expense.

109. As a direct and proximate result of Defendant's misconduct, Plaintiffs have been and will continue to be irreparably harmed, injured and damaged and such harm will continue until and unless enjoined by this Court, and will cause injury to FKC and FKI's reputation which cannot be remedied solely through an award of damages.

110. As a direct and proximate result of Defendant's unlawful acts, Plaintiffs have been and continue to be damaged, have suffered reputational injury flowing directly from said unlawful acts.

111. Plaintiffs are entitled to injunctive relief, recover compensatory damages, treble damages and reasonable attorneys fees and costs.

112. Plaintiffs have no adequate remedy at law.

113. Defendant's misconduct has been and is knowing, deliberate and willful, and Defendant's willful use of the FKC Trademark as aforesaid is without excuse or justification, rendering this an exceptional case and entitling FKC to its counsel fees and costs.

## COUNT V – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

114. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 40 hereof as if set forth herein in full.

115. Plaintiffs have a business relationship with Mattel, Inc.

116. Defendant has been aware of the relationship between Plaintiff and Mattel, Inc.

117. Defendant, with knowledge of the commercial relationship between FKC and Mattel, Inc. for the licensing of the FKC Trademarks for use in connection with dolls, published on her "Frida Kahlo" Facebook page, the false letter to "the public" claiming, *inter alia*, that a court in Mexico has, purportedly, issued a decree that FKC cannot use the brand, image and work of Frida Kahlo without consent of "the owners." This letter was published by Defendant for the express purpose of interfering with and harming FKC's relationship with Mattel, Inc.

118. Defendant issued the aforementioned "open letter" and timed her disparaging social media publicity attacking FKC's right in the FKC Trademarks, to coincide with the publicity generated by the FKC / Mattel, Inc. announcement that it would be selling a line of dolls to honor Frida Kahlo.

119. Defendant's statements were intentional and an unjustified interference with the relationship between FKC and Mattel, Inc.

120. Defendant's statements have caused damage to the Plaintiff, FKC, as a result of the breach of the relationship.

121. Plaintiffs have no adequate remedy at law.

122. Defendant should be enjoined from further tortious activity.

## COUNT VI – DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

123. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 40 and 115

through 120, as if set forth herein in full.

124. Defendant has made public statements directed to the United States, including Mattel, Inc., a corporation located in the United States, misrepresenting that she and her family are the only rightful and purported owners of intellectual property rights for use in connection with dolls, statements that are not only false, but harmful to Plaintiffs' relationship with Mattel, Inc. as well as other licensees of the FKC Trademarks in the United States and abroad.

125. Defendant's long-term relationship with FKC and FKI establish that FKC owns all right title and interest to the FKC Trademarks, and Defendant owns no such rights.

126. However, because Defendant has publicly stated otherwise, a dispute has arisen between Plaintiffs and Defendant as to such rights, and thus a case or controversy exists.

127. Plaintiffs are entitled to a declaratory judgment, declaring the rights and legal relations between them as they relate to the FKC Trademarks.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiffs asks this Court to enter judgment in their favor and against Defendant for:

(A) compensatory damages in an amount greater than $75,000 exclusive of interest and costs;

(B) disgorgement of profits made through the unauthorized use of Plaintiff's trademarks;

(C) an award of reasonable attorney's fees, because this case is exceptional;

(D) an Order enjoining Defendant from making further false statements;

(E) an Order requiring the surrender of the www.fkahlo.com domain;

(F) an Order requiring the surrender or closing of the Facebook, Twitter and any other social media account that creates a false affiliation with FKC, FKI or the FKC

Trademnarks, including, the deletion of all content from the Facebook page claimed to be that of Frida Kahlo;

(G) an Order temporarily and permanently enjoining Defendant and anyone acting in concert with her, from publishing or disseminating libelous or defamatory statements about the Plaintiff, whether in public or on any website or social media page;

(H) an Order declaring that Plaintiff, FKC, is the proper owner of the FKC Trademarks, and that Defendant does not possess any direct ownership interest in the FKC Trademarks; and

(I) for such other and further relief as the Court deems just and proper.

**PLAINTIFFS HEREBY DEMAND a jury trial under FRCP Rule 38(a).**

Dated: May 7, 2018

Respectfully submitted,

By: s/William R. Trueba, Jr.
William R. Trueba, Jr., Esq.
Florida Bar No. 117544
wtrueba@lex188.com
Roberto M. Suarez, Esq.
Florida Bar No. 95762
rsuarez@lex188.com
TRUEBA & SUAREZ, PLLC
9150 S. Dadeland Blvd., Suite 1008
Miami, Florida 33156
Telephone:    (305) 482-1001
Facsimile:    (786) 516-2826