UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO: 18-21826-CIV-SCOLA

FRIDA KAHLO CORPORATION, a
Panamanian corporation, and FRIDA
KAHLO INVESTMENTS, S.A., a
Panamanian corporation,

    Plaintiffs,

v.

MARA CRISTINA ROMEO PINEDO,
an individual, and MARA DE ANDA
ROMEO, an individual,

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants, MARA CRISTINA ROMEO PINEDO ("Mara Cristina"), an individual, and MARA DE ANDA ROMEO ("Mara de Anda"), an individual, respectfully move this Court to dismiss Plaintiffs', FRIDA KAHLO CORPORATION ("FKC"), a Panamanian corporation, and FRIDA KAHLO INVESTMENTS, S.A. ("FKI"), First Amended Complaint [D.E. 7] as this Court (i) lacks subject matter jurisdiction over the underlying contract dispute that would grant Plaintiff the intellectual property rights to advance a Lanham Act violation action, (ii) lacks personal jurisdiction over Defendants, (iii) is the improper venue for the present action, and (iv) in the alternative should be dismissed to afford comity to the current ongoing foreign litigation that may resolve this issue in Defendants' favor.

## **INTRODUCTION**

The present action was filed before this Court by Plaintiffs on May 7, 2018 [D.E. 1] against Defendants, Mexican citizens who do not reside in the United States nor in the state of Florida, *see* Defs. Comp. Exhibit "A" at 3 ¶¶ 2-5, 7; 9 ¶¶ 2-5,7, for, *inter alia*, an alleged Lanham Act violation. Plaintiffs later amended their initial complaint on July 3, 2018 [D.E 7] and did not issue summons until nearly a full two years later on June 2, 2020 [D.E. 19]. Finally, Plaintiffs reopened the present case on May 26, 2021. Defendants now come before this Court to seek the dismissal of the action.

The First Amended Complaint [D.E. 7] asserts that FKC is the "owner by absolute assignment of all the rights, title, and interest to and derived from the 'Frida Kahlo' trademarks…" [D.E. 7 at ¶¶ 6, 20, 22]. However, FKC correctly points out that the intellectual property rights to the Frida Kahlo trademark were vested in Defendants under section XII of Article 90 of Mexico's Industrial Property laws. [D.E. 7 at ¶¶ 13-15]; Defs. Comp. Exhibit "B" at 6, 26, 28, 43, 52. Even so, Plaintiffs attempt to paint a picture to this Court that Defendants signed away their rights to the Frida Kahlo trademark in 2004. [D.E. 7 at ¶¶ 17-19, 23].

However, Defendants make abundantly clear herein that this is not the case. Any such "assignment" or transfer of legal right and title to the Frida Kahlo trademark is illegitimate and Defendants remain the true owners of the Frida Kahlo trademark. Furthermore, by Plaintiffs' own admission through their exhibits, *see* [D.E. 7] Exhibit 2, this Court can bear witness to the fact that there is a lengthy history of Defendants challenging Plaintiffs' alleged claim to owning the legal right and title to the Frida Kahlo trademark. In addition, Defendants have initiated *several* lawsuits in Mexico and Panama refuting the very assertion that Plaintiffs allege is their right to the Frida Kahlo trademark. These foreign lawsuits have been initiated as far back as 2015, *see generally* Defs. Exhibit "C", long before Plaintiffs came before this Court to seek the relief, they allege they

are entitled to. With this knowledge Plaintiffs are thus coming before this Court in an attempt to gain some form of judgement in their favor by misleading this Court as to the current dispute that exists as to who has legal right and title to the Frida Kahlo trademark, and misrepresenting to this Court the legitimacy of such an action without any iota of jurisdiction.

The legal right and title to the Frida Kahlo trademark was allegedly assigned to FKC in four separate assignment contracts (herein "Assignment Contracts") by Isolda Pinedo Kahlo ("Isolda Kahlo"), and subsequently Defendants. A true and correct translated copy of the Assignment Contracts are attached herein as Defs. Comp. Exhibit "B." Each of the four assignment contracts contain a forum selection clause stating:

> each and every dispute arising with regard to the interpretation or fulfillment of this agreement shall be directed to the courts of Mexico City, Federal District, and thus the parties expressly waive any other jurisdiction that could correspond to them by reason of their current or future place of residence.

[D.E. 7] Exhibit 1 at 11; Defs. Comp. Exhibit B at 12, 31, 44, 52. Defendants have and continue to contest as to whether these assignment contracts actually transferred legal right and title to FKC. Out of an abundance of caution and for the sake of clarity, Defendants *stress* the fact that the assignment contracts were executed between FKC and Defendants in Mexico City, not in the United States or the state of Florida. Thus, the lack of any authority under the assignment contracts or of any personal connection to Florida by Defendants deprives this Court of both subject matter and personal jurisdiction over this present action.

## MEMORANDUM OF LAW

### I. Standard for a Motion to Dismiss

For the purposes of a motion to dismiss a district court "must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be

granted." *Blake v. Batmasian*, 191 F. Supp. 3d 1370, 1373 (S.D. Fla. 2016) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.*

However, when defendants "[mount] a factual attack to standing under Federal Rule of Civil Procedure 12(b)(1) asserting lack of subject matter jurisdiction, a court can 'consider extrinsic evidence such as deposition testimony and affidavits' and is not 'constrained to view [the facts] in the light most favorable to the plaintiff.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1246 (S.D. Fla. 2019) (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (citation and internal quotation marks omitted)).

## II. This Court Lacks Subject Matter Jurisdiction over The Underlying Contract Dispute That Gives Plaintiffs any Right Or Title in The Property Rights of The Frida Kahlo Trademark.

Attacking a complaint for lack of subject matter jurisdiction comes in two forms, facial attacks, and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "'Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), *cert.* denied, 449 U.S. 953 (1980)). Whereas "'[f]actual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.*

4

Plaintiffs have alleged in their First Amended Complaint that this Court has subject matter jurisdiction under the Lanham Act per 28 U.S.C. § 1331. However, to address the alleged Lanham Act violation this Court will first need to determine if Plaintiffs have legal right and title to the Frida Kahlo trademark by examining the underlying contracts that assign the right to the Frida Kahlo trademark to Plaintiffs. This Court would have the authority to adjudicate on the contracts by way of supplemental jurisdiction, 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a).

In fact, "[a] federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Lady of America, Inc. v. Gerard*, No. 08-61303-Civ-Gold/Mcaliley, 2008 WL 11333571 at *4 (S.D. Fla. Oct. 16, 2008) (citing *Parker v. Scrap metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006)). Such is the case in this present action. For this Court to address the "appendage" question of whether Defendants violated the Lanham Act, as Plaintiffs allege, this Court must first determine if Plaintiffs have title in the Frida Kahlo trademark that would grant them the right to file such an action under the Lanham Act. Therefore, the essential, underlying issue is determining whether the assignment contracts vest in Plaintiffs legal right and title to the Frida Kahlo trademark.

    **a. This Court lacks subject matter jurisdiction over the Assignment Contracts.**

This Court lacks the subject matter jurisdiction to adjudicate on whether Plaintiffs have legal right and title to the Frida Kahlo trademark under the assignment contracts, as they contain a mandatory forum selection clause, thus depriving this Court of subject matter jurisdiction to adjudicate over the legality of the contracts assigning the rights of the Frida Kahlo trademark to

Plaintiffs. It has been established by the Eleventh Circuit that a district court need "only enforce[ ] those clauses that unambiguously designate the forum in which the parties must enforce their rights under the contract." *Jiangsu Hongyuan Pharm. Co., Ltd. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1323 (S.D. Fla. 2016) (citing *Fla. Polk Cnty. v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1083 n. 8 (11th Cir.1999)). "A mandatory clause . . . 'dictates an exclusive forum for litigation under the contract.'" *Id.* (quoting *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir.2004)). Such a clause is at issue in the present case:

> ***each and every dispute*** arising with regard to the interpretation or fulfillment of this agreement ***shall be directed to the courts of Mexico City***, Federal District, and ***thus the parties expressly waive any other jurisdiction*** that could correspond to them by reason of their current or future place of residence.

[D.E. 7] Exhibit 1 at 11 (emphasis added); Defs. Comp. Exhibit B at 12, 31, 44, 52.

The forum selection clauses, as cited by Plaintiffs, in Exhibit 1 of their First Amended Complaint provides that litigation can ***only*** be conducted before a court in Mexico City and that all rights to dispute the agreements in any other jurisdiction are waived. *Id.* Therefore, this Court lacks subject matter jurisdiction to adjudicate whether the assignment contracts vest in Plaintiffs the right and title to the Frida Kahlo trademark because under those contracts that power is vested ***solely*** in the courts of Mexico City. Moreover, the assignment contracts were prepared and executed in Mexico before a Mexican notary, *see generally* Defs. Comp. Exhibit B. As such, even if the assignment contracts did not include a mandatory forum selection clause the lack of contact with the United States and this forum state, Florida, further stresses the fact that this present action has no legitimate reason as to why it is before this Court.

## III. This Court lacks Personal Jurisdiction over the Defendants.

A federal district court sitting in diversity undertakes a two-step inquiry in ruling on a motion to dismiss for lack of personal jurisdiction. "First, it must determine whether the exercise of jurisdiction is appropriate under the state long-arm statute. Second, it must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1343 (S.D. Fla. 2017) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Under the first prong, district courts must analyze the states long-arm statute and construe it as the state's supreme court would. *See Lockard v. Equifax, Inc.,* 163 F. 3d 1259, 1265 (11th Cir. 1998).

There are two components of jurisdiction under Florida's long arm statute: general and specific. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 477 F.2d 1357, 1360 (11th Cir. 2006). Florida's general jurisdiction provision states that a defendant who is engaged in substantial and non-isolated activities within the state, whether such activities are wholly interstate, intrastate or otherwise, is subject to the jurisdiction of the courts of the state, whether or not the claim arises from the activity(ies). FLA. STAT. § 48.193(2). This provision allows the district court to assert general personal jurisdiction over a nonresident defendant, who has substantial and non-isolated activity within Florida even when that activity is unrelated to the cause of action being litigated. *Id*. However, when applying Florida's long-arm statute a federal district court must also ensure that if the law subjects a nonresident defendant to personal jurisdiction such exercise of jurisdiction also conforms with the due process clause of the Fourteenth Amendment. *See Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021) (holding that "[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant.).

Furthermore, the United States Supreme Court has held that "an individual is subject to general jurisdiction in her place of domicile." *Ford Motor Co.*, 141 S.Ct. at 1024 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Court further explains that the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State . . .'" and that "the contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 141 S.Ct. at 1024-25. Ultimately, for a defendant to survive a motion to dismiss for personal jurisdiction under specific personal jurisdiction "the plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts with the forum.'" *Id.* at 1025 (quoting *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 582 U. S. —, —, 137 S.Ct. 1773, 1780 (2017)). In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.*

The Eleventh Circuit uses a three-part Due Process test to determine if enforcing jurisdiction over nonresident defendants violates the Fourteenth Amendment. First, whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; second, whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and third, whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

As to the first prong, a court should "focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56. Furthermore, when looking at the purposeful availment prong a court may apply the traditional minimum-contacts test, or, in

intentional-tort cases, may utilize the effects test. First, under the minimum contacts test a court assesses

> the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum.

*Louis Vuitton Malletier, S.A.*, 736 F.3d at 1357. To do this the court must "identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy [the] criteria." *Id.* On the other hand, "[u]nder the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1356. "This occurs when the tort: (1) was intentional; (2) was ***aimed*** at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (emphasis added). As to the third prong a court should consider: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358.

Finally, it is well settled law that unless the alleged tortious acts are aimed or focused on a forum state the act does not rise to the level of purposeful availment to the jurisdiction of the forum state. *See Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1373-74 (S.D. Fla. 2019) (finding that a Tweet that was made about a lawsuit in Florida where the defendant did not live or work was insufficient to avail the defendant to the jurisdiction of the court); *Bioheart, Inc. v. Peschong*, No. 13-60304-CIV, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013) (finding defendant who posted allegedly defamatory statements on website message board did not

purposefully direct his tortious acts toward Florida because there was "no reason for [defendant] to have thought that Bioheart's investors would be located in Florida, as opposed to any other state"); *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010) (dismissing libel suit for lack of personal jurisdiction where there was no evidence "showing that the website at issue targeted Florida or that Defendants acted to aim their conduct at a Florida audience"); *Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *3 n.4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that consumers across the nation may access his blog posts is not enough to support the exercise of personal jurisdiction." (citation omitted)).

    a. **Plaintiffs fail to satisfy the limited requirement for this Court to have general *in personam* jurisdiction over Defendants.**

As the Supreme Court held in *Ford Motor Co.*, an individual is subject to the general *in personam* jurisdiction if that individual is domiciled in that state. *Ford Motor Co.*, 141 S.Ct. at 1024. Furthermore, under Florida law a person is subject to general jurisdiction in Florida if the individual's contacts are substantial and non-isolated. *Stubbs*, 477 F.2d at 1360. However, such contracts do not exist in the present case. Both Defendants, Mara Cristina and Mara de Anda, do not live in Florida nor are they even citizens of the United States. Defendants are citizens of and domiciled in Mexico. *See* Defs. Comp. Exhibit A at 3 ¶¶ 2-5, 7; 9 ¶¶ 2-5,7. Moreover, Plaintiffs do not, at any point in their pleadings, allege that this Court has general *in personam* jurisdiction over Defendants by means of tortious acts in Florida. In fact, Plaintiffs simply raise boilerplate allegations that Defendants have acted in their individual capacity, or through agents, to tortiously target Plaintiffs' business in Florida as a means to "satisfy" the burden they hold to demonstrate to this Court that it has personal jurisdiction over Defendants. [D.E. 7] at ¶ 4. As such, this Court

does not have general *in personam* jurisdiction over Defendants and therefore Plaintiffs may only seek relief from this Court if this Court has specific personal jurisdiction over Defendants.

### b. Plaintiffs fail to meet their burden to demonstrate that this Court has specific personal jurisdiction over Defendants.

As mentioned above the Eleventh Circuit has established a three-part test to reach a conclusion that specific personal jurisdiction should be exercised. *See* Defs. Mot. to Dismiss at 1; *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355. Furthermore, the initial burden is on Plaintiffs to "plead sufficient facts to support the exercise of personal jurisdiction." Miller, 383 F. Supp. 3d at 170. However, once Defendants establish a prima facie case that this Court lacks specific personal jurisdiction the burden shifts back to Plaintiffs to demonstrate the contrary. *Id.*

### i. Plaintiffs fail to plead or demonstrate that Defendants had any contacts in Florida to relate to the claims Plaintiffs allege.

"A plaintiff's claim must 'arise out of or relate to at least one of the defendant's contacts with the forum.'" *Id.* (quoting *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355). Here, Plaintiffs have failed to plead any facts or put forward any evidence that demonstrates that Defendants did in fact have any contacts with the state of Florida. As such, Plaintiffs fail to meet their burden under the first part of the Eleventh Circuit's three-part test.

### ii. Plaintiffs fail to plead or demonstrate that Defendants availed themselves of the protections or benefits of the state of Florida or to the jurisdiction of this Court.

Plaintiffs fail to meet their burden under the first step of the Eleventh Circuit's three-part test, however, even if the Court were to find that the first step was satisfied, Plaintiffs also fail to meet their burden as to the second part of the test – Florida's Long Arm Statute. The Long Arm Statute outlines nine statutory basis for an individual to be subject to specific personal jurisdiction in Florida, including in relevant but not limited to:

> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state. 2. Committing a tortious act within this state. 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either: a. The defendant was engaged in solicitation or service activities within this state; orb. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

FLA. STAT. § 48.193. Moreover, these requirements under Florida law also go toward determining if Defendants meet the traditional minimum contacts' test. Here, they do not.

Plaintiffs allege that Defendants "operated, engaged in, or carried on a business in this state by directing offers for the sale of goods bearing the FRIDA KAHLO trademark, and [offer] to license the use of the FRIDA KAHLO trademark into this state." [D.E. 7] at ¶ 4. Plaintiffs also allege that Defendants "[caused] injury to persons or property within this state arising out of an act or omission by the Defendants outside this state" and that Defendants were also "engaged in solicitation of the sale of goods or services directed to this state." *Id.* Once again, Plaintiffs' boilerplate arguments do not rise to the constitutional standard of specific personal jurisdiction that the Supreme Court requires be demonstrated for a court to exercise jurisdiction over a nonresident defendant. In *Burger King Corp.*, the Supreme Court held that for a person to be subject to specific personal jurisdiction that person must "purposefully avail" him or herself to the benefits of the forum state. *Burger King Corp.*, 471 U.S. at 475. The Court has also held that to purposefully avail oneself to the jurisdiction of a state a person must have the "privilege of conducting activities within the forum State" and that "the contacts must be the defendant's own choice and not 'random, isolated, or fortuitous'" *Ford Motor Co.*, 141 S.Ct. at 1024-25. Plaintiffs

fail to plead any such "privilege" that Defendants maintain in the alleged business that Plaintiffs argue Defendants carry out in Florida. In fact, Plaintiffs' only argument is that Defendants' statements made on social media platforms satisfy Florida's long-arm statute.

Furthermore, Plaintiffs fail to demonstrate that Defendants purposefully availed themselves of the jurisdiction of Florida under the effects test, which states that "a nonresident defendant's single tortious act can establish purposeful availment when the tort was: (1) 'intentional; (2) [ ] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.'" *Miller*, 383 F. Supp. 3d at 1373 (citing *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356). It is well settled law that the use of social media alone is not sufficient to subject an individual to specific personal jurisdiction. This Court has previously rejected that "a tweet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause." *Id.* at 1375. In taking this position this Court agreed with the vast majority of federal courts across the country that have uniformly held that *the **use of social media without purposefully targeting a posting on a social media platform or a statement to a specific forum state is not enough to "purposefully avail" an individual to the jurisdiction of that forum state***. Such is the nature of the allegations in this case.

Plaintiffs allege, and provide screenshots as evidence, of the statements made by Defendants regarding the litigation in Mexico between Defendants and FKC. *See* [D.E. 7] Exhibit 2. However, nowhere in the Facebook post does it demonstrate that the post was targeted at Florida, much less any region of the United States. Simply put, Plaintiffs fail to provide this Court with any facts or evidence that demonstrates that Defendants targeted Florida with its social media content. In fact, Plaintiffs themselves make the point that the statements made by Defendants were not aimed or targeted at Florida. Plaintiffs state in their First Amended Complaint that "[u]pon

information and belief, Defendants, on or about March 9, 2018, appeared on television and gave an interview *intended for the American audience* that called into question FKC's right to use the 'Frida Kahlo' mark, and FKC's *right to license and manufacture products in the United States*. . . ." [D.E. 7] at ¶ 43 (emphasis added). The social media post that Plaintiffs argue is the necessary contact that this Court needs to exercise specific personal jurisdiction is exactly the opposite, as pled by Plaintiffs. It speaks to the "American audience," not Florida, and much less the Southern District of Florida's audience.

The same lack of evidence applies to Plaintiffs' Exhibit 3 which is used by Plaintiffs to argue that Defendants used their online website to target business in Florida and to injure Plaintiffs' business in Florida. However, here too Plaintiffs' argument fails. Plaintiffs' Exhibit 3 does not demonstrate a single word or phrase that denotes the targeting of its advertising or purpose to Florida. *See* [D.E. 7] Exhibit 3. Without more, Plaintiffs do not meet their burden to demonstrate to this Court that it has specific personal jurisdiction over Defendants.

        iii.    **Fair Play and Substantial Justice weighs against exercising specific personal jurisdiction over Defendants.**

Finally, Plaintiffs fail to meet the requirements under the third step of the Eleventh Circuit's three-step test – whether fair play and substantial justice weigh in favor or against the exercise of jurisdiction. When determining whether fair play and substantial justice calls for the exercise of specific personal jurisdiction over a nonresident defendant this Court must look to five factors: "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in advancing fundamental substantive social policies." *Miller*, 383 F. Supp. 3d at 1375 (citing *Burger King Corp.*, 471 U.S. at 476-77).

Without question, the burden on Defendants in this case is great as they are not residents of Florida, nor of any other state of the United States. Defendants are citizens and residents of Mexico and live in Mexico City. *See* Defs. Comp. Exhibit A at 3 ¶¶ 2-5, 7; 9 ¶¶ 2-5,7. The burden for them to litigate in another country is great, especially when FKC initiated the present action as a seemingly retaliatory lawsuit after Defendants began civil proceedings in Mexico and Panama to seek the dissolution of FKC and the enforcement of Defendants' intellectual property rights over the Frida Kahlo trademark. Therefore, the first factor should weight against the exercise of jurisdiction.

Second, the state of Florida has no interest in the adjudication of this dispute as it gains no value from who maintains the rightful title of the Frida Kahlo trademark. Plaintiffs are Panamanian companies and Defendants are Mexican citizens. Regardless of whether this Court could adjudicate on the issue, it would be of little use to the state of Florida in terms of economic impact or impact on Florida citizen. Therefore, the second factor also weighs against the exercise of jurisdiction.

Third, the Plaintiffs' interest in obtaining convenient and effective relief will not come from the litigation of the present case. Defendants have several pending litigations against FKC in Mexico and Panama which may render any outcome of this present case moot should the courts of Mexico and Panama agree with Defendants on the merits of the assignment contracts. As such, even in the unlikely event that this Court were to find that it had subject matter jurisdiction and personal jurisdiction, it would be necessary for a stay to be issued by this Court pending the resolution of the foreign litigation to ensure that this Court and the parties do not exhaust extensive amounts of resources litigating this case simply to have it become moot should a foreign court rule

in favor of Defendants. Therefore, the third factor also weighs against the exercise of personal jurisdiction over Defendants.

Fourth, the interstate judicial system has no interest or stake in the outcome of this dispute, nor would exercising personal jurisdiction over Defendants help in obtaining a more efficient resolution to controversies for the interstate judicial system. In fact, exercising personal jurisdiction in this case would have the opposite effect. For the aforementioned reasons that may lead to a potential delay in this litigation should it go forward the interstate judicial system would not benefit from this litigation. Rather, the outcome that would help to provide more efficient resolutions to controversies would be for this Court to dismiss the case to allow Defendants to pursue their claims in the foreign courts which would lead to far more efficient ways in resolving disputes within the interstate judicial system. Therefore, the fourth factor also weighs against exercising specific personal jurisdiction.

**IV.** **This Court is not the proper venue for the dispute between Plaintiffs and Defendants.**

Much like the standards for subject matter jurisdiction and personal jurisdiction having been established by the Supreme Court, venue is no different. When determining whether venue is proper, 28 U.S.C. § 1391 governs the analysis. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for Western Dist. of Texas*, 571 U.S. 49, 55 (2013). Section 1391(b) provide that a civil action may be brough in a judicial district in which any defendant resides, if all Defendants are residents of the State in which the district is located or in the judicial District in which substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)1-3.

The Supreme Court has held that "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under §

1406(a)." *Atlantic Marine Const. Co. Inc.*, 571 U.S. at 577. Furthermore, "on a motion to dismiss based on improper venue, the plaintiff[s] [have] the burden of showing that venue in the forum is proper." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 128 (S.D. Fla. 2004). Moreover, "the court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." *Id.*

It is clear from the facts pled in Plaintiffs' First Amended Complaint and from the exhibits provided within this motion that venue is not proper in this case. First, neither of the Defendants in this present case reside in Florida, nor in the Southern District of Florida. *See* Defs. Comp. Exhibit A at 3 ¶¶ 2-5, 7; 9 ¶¶ 2-5,7. Second, no part of the events that Plaintiffs allege led to a Lanham Violation or a tortious act occurred in Florida. Defendants' comments on social media were not targeted or aimed at Florida, nor were Defendants residing in Florida when those comments were made. And finally, there is no judicial district in the whole of the United States that has personal jurisdiction over Defendants. No judicial district will ever have general *in personam* jurisdiction over Defendants because they do not reside nor are they domiciled within any of the United States' judicial districts. Furthermore, no judicial district in the United State will have the ability to exercise specific personal jurisdiction over Defendants for the reasons outlined above.

Therefore, venue in this present case is improper. The proper venue is a court in Mexico City. Hence, this Court should dismiss the present case under the doctrine of *forum non conveniens*.

## CONCLUSION

For the above mentioned reasons, Defendants, MARA CRISTINA ROMEO PINEDO ("Mara Cristina"), an individual, and MARA DE ANDA ROMEO ("Mara de Anda"), an individual respectfully request that this Honorable Court dismiss Plaintiffs' First Amended Complaint [D.E. 7] as this Court (i) lacks subject matter jurisdiction over the underlying contract dispute that would grant Plaintiff the intellectual property rights to advance a Lanham Act violation action, (ii) lacks personal jurisdiction over Defendants, (iii) is the improper venue for the present action, and (iv) in the alternative should be dismissed to afford comity to the current ongoing foreign litigation that may very well resolve this issue in Defendants' favor, and grant Defendants such further relief as the Court deems necessary, just, and proper.

## RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1 undersigned counsel hereby certifies that counsel for the movant has attempted to confer with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. Undersigned counsel e-mailed Counsel for Plaintiffs on June 16, 2021, in an effort to confer regarding the contents of this motion. Plaintiffs' Counsel responded to undersigned counsel on June 17, 2021, that they would oppose undersigned counsel's motion.

Respectfully submitted,

EPGD ATTORNEYS AT LAW, P.A.
777 SW 37th Ave., Ste. 510
Miami, Florida 33135
T: (786) 837-6787
oscar@epgdlaw.com
joanna@epgdlaw.com
madelyn@epgdlaw.com

BY: /S/ Joanna Andrade Lehmann
Joanna Andrade Lehmann, Esq.
Florida Bar No.: 1014578
Oscar A. Gomez, Esq.
Florida Bar No.: 58680
Madelyn Peterson, Esq.
Florida Bar No.: 1017228

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or via First Class U.S. Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully Submitted,

**EPGD ATTORNEYS AT LAW, P.A.**
Attorneys for Intervenors
777 SW 37th Ave. Ste. 510
Miami, FL 33135
T: (786) 837-6787
F: (305) 718-0687
Emails:  Joanna@epgdlaw.com
         Oscar@epgdlaw.com
         Madelyn@epgdlaw.com

BY: /S/ Joanna Andrade Lehmann
    Joanna Andrade Lehmann, Esq.
    Florida Bar No.: 1014578

**SERVICE LIST**

Roberto M. Suarez, Esq.
Florida Bar No. 95762
Trueba & Suarez, PLLC
9150 S. Dadeland Blvd., Suite 1008
Miami, Florida 33156
Telephone: (305) 482-1001
Facsimile: (786) 516-2826
rsuarez@lex188.com

William R. Trueba, Jr., Esq.
Florida Bar No. 117544
Trueba & Suarez, PLLC
9150 S. Dadeland Blvd., Suite 1008
Miami, Florida 33156
Telephone: (305) 482-1001
Facsimile: (786) 516-2826
wtrueba@lex288.com