United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Frida Kahlo Corporation and Frida Kahlo Investments, S.A., Plaintiffs, <br><br> v. <br><br> Maria Cristina Romeo Pinedo and Mara de Anda Romeo, Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 18-21826-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

**Order on Motion to Dismiss**

This matter is before the Court on the Defendants' motion to dismiss. (ECF No. 23). The Defendants, two Mexican citizens, argue that this case—a trademark infringement case brought by two Panamanian corporations—cannot be heard in the Southern District of Florida. (*Id.*) The Plaintiffs disagree, arguing that jurisdiction is appropriate. (ECF No. 30). After a review of the briefs and relevant law, the Court **grants** the Defendants' motion to dismiss. (**ECF No. 23**.)

1. **Background**

*Ars longa, vita brevis*—life is short, but art is long. True to that aphorism, Frida Kahlo died in 1954 at the age of forty-seven, but her art continues to inspire. However, a different aphorism is more apt here—fame comes with a price. While Frida Kahlo's art moves audiences, the parties here have engaged in a decade-long, international fight over ownership of the "Frida Kahlo" brand. While the Southern District of Florida may be a stranger to this dispute, the parties are no strangers.

The facts begin at Frida Kahlo's death in 1954. Upon her death, certain of Frida Kahlo's property rights passed to her niece Isolda Pinedo Kahlo. (ECF No. 7 at ¶¶ 12–14.) Isolda Pinedo Kahlo's daughter, Defendant Maria Cristina Romeo Pinedo ("Pinedo"), obtained power of attorney over these property rights in 2003. (*Id.* at ¶ 15.) Defendant Mara de Anda Romeo ("Romeo") is Pinedo's daughter. (*Id.* at ¶ 11.)

In 2004, Pinedo created Plaintiff Frida Kahlo Corporation ("FKC") in order to celebrate and commercialize the "Frida Kahlo" brand. (*Id.* at ¶¶ 16–17.) In 2007, Pinedo, acting through her mother's power of attorney, and her mother assigned various trademarks relating to Frida Kahlo to FKC (the "Assignment"); this assignment was recorded in the United States. (ECF No. 7-1; ECF No. 7 at ¶¶ 20, 23.) Today, FKC is the owner of sixteen registered trademarks (including

those assigned). (ECF No. 7 at ¶ 24.) Pinedo remains a shareholder in FKC. (*Id.* at ¶ 18.)

Around 2011, Pinedo and Romeo became disaffected with FKC. They sought to attack the validity of FKC's ownership of "Frida Kahlo"-related trademarks and to misappropriate such trademarks. (*Id.* at ¶¶ 31–32.) The Defendants have publicly asserted, through online and televised means, that FKC does not own these trademarks. (*Id.* at ¶¶ 35–44.) Moreover, the Defendants, through a third-party corporation, have sent cease-and-desist letters, including to a media company in Miami, Florida, asserting ownership of these trademarks. (ECF No. 30-1 at ¶¶ 5–6.) The Defendants also operate a website and have contracted with agents in an effort to license rights in "Frida Kahlo"-related trademarks. (ECF No. 7 at ¶¶ 36, 46–49.) One of the Defendants' agents represented that they stopped a deal between FKC and toy-maker Mattel to produce a Frida Kahlo doll in Mexico. (*Id.* at ¶ 49.) Moreover, the Defendants have initiated lawsuits in Panama and Mexico relating to FKC and the Frida Kahlo trademarks. (ECF No. 30-1.) These efforts have damaged FKC's brand and caused financial harm. (ECF No. 7 at ¶ 50.)

## 2. Legal Standard

The Defendants bring this motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3). When evaluating a factual attack to subject-matter jurisdiction under Rule 12(b)(1), the court may consider matters outside the pleadings and "is free to independently weigh facts" in order to "decide for itself the factual issues that determine jurisdiction." *Interim Healthcare, Inc. v. Interim Healthcare of Se. La., Inc.*, No. 19-cv-62412, 2020 WL 3078531, at *6–7 (S.D. Fla. June 10, 2020) (Bloom, J.).

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must initially establish a *prima facie* case of personal jurisdiction, after which the burden shifts to the defendant to counter the plaintiff's allegations. *See id.* at *7. If the defendant meets this burden, the plaintiff must produce evidence to support jurisdiction—merely rearticulating its allegations is not sufficient. *See id.* (quoting *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986)). Where evidence conflicts, the court must "construe all reasonable inferences in favor of the non-movant plaintiff." *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

### 3. Discussion

#### A. Forum-Selection Clause

A threshold issue is whether this Court has subject-matter jurisdiction or whether a forum-selection clause—contained within a contract purporting to assign some, but not all, of the trademarks at issue—controls. The Court holds that where an assignee of various trademarks brings an action against the assignor for trademark infringement, a forum-selection clause of the type at issue here controls.

The forum-selection clause in the Assignment states in relevant part: "each and every dispute arising with regard to the interpretation or fulfillment of this agreement shall be directed to the courts of Mexico City, Federal District[.]" (ECF No. 7-1 at 12.) In the Eleventh Circuit, "forum selection clauses are broadly construed[.]" *Grape Stars Int'l, Inc. v. nVentive, Inc.*, No. 20-20634-CIV, 2020 WL4586123, at *7 (S.D. Fla. Aug. 10, 2020) (Altonaga, J.). Therefore, "[forum-selection] clauses referencing 'any lawsuit regarding this agreement' . . . have been broadly construed to include . . . claims arising *directly or indirectly* from the contractual relationship[.]" *Jiangsu Hongyuan Pharm. Co., Ltd. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1326 (S.D. Fla. 2016) (Gayles, J.) (cleaned up) (emphasis added); *see also Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (finding that a New York forum-selection clause pertaining to "any case or controversy arising under or in connection with [the contract]" should be read to "include[] all causes of action arising directly or indirectly from the business relationship evidenced by the contract").

Construing the forum-selection clause in the Assignment broadly, claims relating to the trademarks assigned must be brought in Mexico City. Indeed, the forum-selection clause here pertains to "*each and every dispute arising with regard to* the interpretation or fulfillment of this agreement[.]" (ECF No. 7-1 at 12) (emphasis added). This clause is arguably narrower than the clauses at issue in *Jiangsu* and *Stewart*, as it is limited to cases arising out of "the interpretation or fulfillment" of the Assignment. (*Id.*) But regardless of whether this is a meaningful limitation on the scope of the clause *vis-à-vis* those cited above, the Court holds that the claims brought here arise out of, directly or indirectly, the "interpretation or fulfillment" of the Assignment.

The Plaintiffs argue that cannot be, as they bring no claims pursuant to the Assignment.[1] (ECF No. 30 at 4–5.) However, the Defendants raise the

---

[1] The Plaintiffs also argue that the Assignment has no use here as any arguments as to its validity had to be brought within five years after execution in 2007. (ECF No. 30 at 4) (citing Fla. Stat. § 95.11(2)(b)). However, a statute of limitations does not bar the enforcement of a

validity of the Assignment as a defense (arguing that the assignment was invalid), which is sufficient to bootstrap a statutory claim to a broad forum-selection clause such as here. *See John Wyeth & Bro. Ltd. v. Cigna Intern. Corp.*, 119 F.3d 1070, 1076 & n.5 (3d Cir. 1997) ("The answer to the question whether a 'defense' based on a contract that contains a forum selection clause implicates that clause depends on the language of the clause."); *see also Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) (enforcing a forum-selection clause and holding that claims for trademark infringement "arose out" of a distributorship agreement, which was raised as a defense, as every outcome in the case "depend[ed] on an understanding of the parties' written bargain and of its implied terms"). As the Plaintiffs' claims regarding the assigned marks depend on a resolution of the Defendants' argument concerning ownership of the marks, as interpreted in the Assignment, the forum-selection clause controls.[2]

### B. Personal Jurisdiction

As the forum-selection clause only pertains to the marks that were assigned, the Court must move to the next inquiry: whether the Court has personal jurisdiction over the Defendants for claims regarding marks that are not governed by the Assignment. The Court answers no.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *See Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.*

In federal-question cases, such as trademark-infringement lawsuits, a court must first ensure that it has personal jurisdiction over the defendant under the relevant state's long-arm statute. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855–56 (11th Cir. 1990); *see* Fed. R. Civ. P. 4(k)(1)(A). Florida's long-arm statute "must be strictly construed, and any doubts about the applicability of the statute are resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *See*

---

forum-selection clause. Whether or not the Defendants can challenge the validity of the Assignment in the contractually-agreed forum is a separate question for that forum.
[2] The Plaintiffs did not contest the validity of the forum-selection clause, only its application here.

*Interim Healthcare*, 2020 WL 3078531, at *8 (quoting *Gadea v. Star Cruises, Ltd.*, 949 So.2d 1143, 1150 (Fla. 3d DCA 2007)). If personal jurisdiction is appropriate under the state long-arm statute, the court must then "analyze this long-arm jurisdiction under the due process requirements of the federal constitution." *Cable/Home Commc'n*, 902 F.2d at 857.

### 1. Florida Long-Arm Statute

Under Fla. Stat. § 48.193(1)(a)(2), a nonresident is subject to personal jurisdiction in Florida "for any cause of action arising from . . . committing a tortious act within Florida." *See* Fla. Stat. § 48.193(1)(a)(2) (cleaned up). This long-arm jurisdiction even extends to defendants who committed their tortious acts outside the state if their acts "cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir. 1999). For purposes of this analysis, trademark infringement is considered a tort. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) ("[W]e conclude that Louis Vuitton's trademark claims allege 'tortious acts' for purposes of Florida's long-arm statute."). Moreover, the Eleventh Circuit had held that a trademark infringement on the Internet "causes injury and occurs in Florida 'by virtue of the website's accessibility in Florida.'" *Id.* at 1353–54 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)).

The Plaintiffs allege that the Defendants own a website and use social media in a manner that uses the trademarks at issue and promotes infringing products and services. (*See* ECF No. 7 at ¶¶ 36–40.) The Plaintiffs allege that these websites are accessible in Florida. (*See id.* at ¶ 82.) Therefore, Florida's long-arm statute is satisfied.[3]

### 2. Due Process

While personal jurisdiction is warranted by virtue of Rule 4(k)(1), the Court must assure itself that the exercise of personal jurisdiction is consistent with due process. Due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotations omitted). This liberty interest is particularly acute where the alleged contacts at issue

---

[3] The Plaintiffs argue in the alternative that the "national long-arm statute" of Rule 4(k)(2) also confers personal jurisdiction in this district. (ECF No. 30 at 15.) However, courts have expressed doubt over whether "general jurisdiction over a foreign defendant could ever be available under Rule 4(k)(2)." *Esterina Giuliani v. NCL (Bahamas) Ltd.*, No. 1:20-cv-22006, 2021 WL 4099502, at *9 (S.D. Fla. Sept. 8, 2021) (Gayles, J.). Nonetheless, because Rule 4(k)(1) is met, the Court need not address this point.

occurred through the Internet. Activity posted online could be shared across hundreds of jurisdictions without the defendant's intent or knowledge. Such activity could easily bring a defendant into a jurisdiction based only on "random, fortuitous, or attenuated contacts" with the forum. *See id.* at 475 (cleaned up). That, due process does not permit.

With that in mind, the Eleventh Circuit uses a three-part test[4] to determine whether the exercise of personal jurisdiction comports with due process:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum;
> (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
> (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton*, 736 F.3d at 1355 (internal quotation marks omitted).

As to the first prong (*arising out of or relatedness*), a court should "focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56. As to the second prong (*purposeful availment*), a court may apply the traditional *minimum-contacts test*, or, in intentional-tort cases, may utilize the *effects test*. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1356 (citation omitted). "This occurs when the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (cleaned up). As to the third prong (*fair play and substantial justice*), a court should "consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (quotation marks omitted).

Therefore, the Court turns to the three tests identified above: (1) arising out of or relatedness; (2) purposeful availment; and (3) fair play and substantial justice.

---

[4] While the unique difficulties of determining personal jurisdiction where the contacts occurred online may necessitate a different test, the Eleventh Circuit has continued to apply this three-part test where the website is "commercial and fully interactive." *Louis Vuitton*, 736 at 1355 n.10.

### a. Arising out of or relatedness

"A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (cleaned up). The Plaintiffs claim that their causes of action arise out of the Defendants' use of trademarks on their website and social media accounts, which are accessible to residents of Florida, as well as out of the Defendants' attendance at a trade show, presumably held in the United States. (ECF No. 30 at 12 (citing ECF No. 7 at ¶¶ 34–41).) The Court assumes that the use of a website that is accessible in Florida is a sufficient "contact" under this first prong of the test. Therefore, the Plaintiffs have articulated that their claims "arise out of or relate to" the alleged contacts. While this prong is satisfied, the Plaintiffs have not met the purposeful availment test.

### b. Purposeful availment – Effects Test

Applying the "effects test," the Court finds that the Defendants have not purposefully availed themselves of the privilege of conducting activities within the forum state. As stated above, the "effects test," which applies to intentional torts, is met where a plaintiff shows that the tort "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Vuitton*, 736 F.3d at 1356. As to the second element, the Plaintiffs have not demonstrated that the Defendants' alleged infringing activity on the Internet was aimed at Florida. The Plaintiffs allege that the Defendants' online statements were "aimed at consumers . . . and others, located in the U.S., including Florida because . . . the website offers content in English and Spanish and is accessible in this judicial district." (*See* ECF No. 7 at ¶¶ 82, 119); (ECF No. 30 at 13–14.) However, such bare-boned conclusory allegations do not show that this conduct was "aimed" at Florida.

Courts across jurisdictions have held that activity on the Internet, by itself, is not a sufficient minimum contact to establish "purposeful availment" under the Due Process Clause. *See Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1375 (S.D. Fla. 2019) (Altonaga, J.) ("[C]ourts have uniformly rejected the argument that a tweet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause."). Rather, something more is required to show that online activity is "aimed" at a particular jurisdiction. *See CCTV Outlet, Corp. v. Desert Sec. Sys. L.L.C.*, No. 17-60928-CIV, 2017 WL 5640717, at *3 (S.D. Fla. Aug. 7, 2017) (Cohn, J.) (looking to: references to the forum state on the website;

mechanisms for ordering goods or services to the forum state on the website; interactive features on the website; and passive advertising of contact information). Here, the social media postings at issue did not reference Florida, and while the Plaintiffs allege that the Defendants' website offers to sell infringing goods, there is no allegation that such goods were ever sold in Florida, let alone that the Defendants knew of any such sales. *See id.* (holding that the "purposeful availment" prong was not met, as the website at issue was not "manifestly intended" to target Florida and the defendants had no knowledge of sales in Florida). The closest that the Plaintiffs come to alleging a minimum contact is that Familia Kahlo, S.A. de C.V.—which is not a defendant, but which Plaintiffs allege is the Defendants' "company"—sent one cease and desist letter to a Miami-based media company, asserting ownership over Frida Kahlo's name and likeness. (ECF No. 30-1 at ¶¶ 5–6, Ex. 3.) However, a single contact by a third party—the relation of which to the named Defendants is not clear—is not enough to establish personal jurisdiction.[5]

Moreover, the Plaintiffs have not established the third prong of the "effects test"—that the Defendants would anticipate harm in Florida. Plaintiffs must "allege facts clearly indicating that the defendant knew that it was likely committing trademark infringement specifically against the plaintiff in the forum state and continued to do so anyway." *CCTV Outlet*, 2017 WL 5640717, at *3. The Plaintiffs assert that because the Defendants must have known that FKC has an office in Bal Harbor, Florida, they knew that harm would occur in Florida. (ECF No. 30 at 13.) The Defendants dispute that FKC has such an office. (ECF No. 36 at 4.)  Such conclusory allegations—amounting only to an address on paper—are insufficient to establish that the Defendants knew that it was causing harm in Florida. And the mere act of posting content on the Internet, by itself, is also insufficient to show that the Defendants knew they were causing harm in Florida. *See Miller*, 383 F. Supp. 3d at 1373–34.

### c. *Purposeful availment – Minimum Contacts Test*

Similarly, applying the "minimum contacts test," the Court finds that the Plaintiffs have not met their burden. Under the "minimum contacts" test, the contacts must "(1) [be] related to the plaintiff's cause of action; (2) involve some

---

[5] The Plaintiffs also allege that the Defendants have sufficient minimum contacts because Defendant Pinedo, at some time in the past, travelled to Florida in connection with her role at FKC. (ECF No. 30 at 13.) Whatever travels Pinedo conducted in connection with her former role at FKC have no impact on whether Pinedo, as an individual, has purposefully availed herself of Florida in connection with the alleged infringing activities at issue. Similarly, a single reference to a conference that the Defendants may have attended somewhere in the United States does not establish minimum contacts with Florida. (*Id.* at 10.)

act by which the defendant purposefully availed [itself] of the privileges of doing business within the forum; and (3) [be] such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357.

In particular, the Court holds that the Plaintiffs have not met the second prong, as the Plaintiffs have provided no allegations concerning how many consumers the Defendants reached in Florida. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 781 (1984) (holding that minimum contacts were established where the defendant sold "some 10 to 15,000 copies" of its magazine in the forum state); *see also Miller*, 383 F. Supp. 3d at 1374 (holding that the minimum contacts test was not met where less than one percent of the defendant's social-media audience was in Florida and there was no evidence of profit from sales in Florida). Moreover, as above, social-media posts "not specifically directed to a forum state" are not sufficient minimum contacts to confer personal jurisdiction. *See Miller*, 383 F. Supp. 3d at 1375.

Additionally, the Court holds that the Plaintiffs have failed to establish the third prong, namely, that the Defendants "should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. As discussed above, the Defendants' online activity alone—without a showing of sales in Florida or a purposeful targeting of Florida—does not establish that they "should reasonably anticipate" litigation in Florida. Moreover, the conclusory allegations regarding Pinedo's past work for FKC do not establish that Pinedo, and certainly not Romeo, should have reasonably anticipated litigation in Florida. (ECF No. 30 at 14.)

### d. Fair Play and Substantial Justice

A defendant must show that personal jurisdiction offends "fair play and substantial justice" only if the plaintiff meets its burden on the two first prongs. *See Louis Vuitton*, 736 F.3d at 1355. While the Plaintiffs have not met their burden, the Court will briefly address this last test, looking to "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (cleaned up).

First, the Court finds that litigation in Florida would be burdensome for the Defendants—two individuals who both reside in Mexico City and have no connection to Florida. (ECF No. 23 at 15.) Second, Florida's interest in this dispute is minimal. While the Plaintiffs allegedly have an office in Florida, there has been no showing of the impact of the Defendants' alleged infringements in Florida to raise Florida's interest beyond a generalized interest in enforcing federal law. Third, while the Plaintiffs have an interest in obtaining convenient

and effective relief, ongoing litigation in Mexico and Panama—countries where the parties indisputably reside—may provide forums for such relief. Last, the judicial system has an interest in resolving the dispute, as the Plaintiffs' claims arise from federal law. In total, these factors weigh against the exercise of personal jurisdiction. Accordingly, the Court holds that the exercise of personal jurisdiction over the Defendants is incompatible with the Due Process Clause and the protections that it affords.

### 4. Conclusion

For the reasons set out above, the Court **grants** the Defendants' motion to dismiss.[6] (**ECF No. 23**.)

**Done and ordered** at Miami, Florida, on September 10, 2021.

Robert N. Scola, Jr.
United States District Judge

---

[6] As the Court holds that the exercise of personal jurisdiction over the Defendants is not appropriate, the Court need not reach the question of venue.